UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

Senen M.,

Plaintiff,

vs.

Frank Bisignano, Commissioner of Social Security,

Defendant.

Case No. 2:25-cv-01386-MDC

**ORDER DENYING PLAINTIFF'S REQUESTED RELIEF (ECF NO. 15) AND AFFIRMING THE ADMINSTRATIVE LAW JUDGE**

This matter involves plaintiff Senen M.'s request to reverse and either order payment of benefits or a remand the Administrative Law Judge's ("ALJ") final decision denying his social security benefits. The Court has reviewed plaintiff's opening brief (ECF No. 15); the opposition brief (ECF No. 17) by defendant Commissioner of Social Security; and plaintiff's reply (ECF No. 18). The Court **DENIES** plaintiff's requested relief and **AFFIRMS** the ALJ's decision for the reasons below.

## I. BACKGROUND AND ISSUES PRESENTED

This case arises under the Social Security Act, Title II. On August 30, 2021, Plaintiff filed an application for disability insurance benefits, alleging disability commencing March 1, 2017. *See* Administrative Record ("AR") at 291-92. The date last insured is December 21, 2022. AR 315. The Commissioner denied plaintiff's claim by initial determination on June 30, 2023. AR 87-91. Plaintiff sought reconsideration of that determination on August 15, 2023 (AR 109), which the Commissioner denied on September 29, 2023 (AR 110-13). Plaintiff requested a *de novo* hearing before an Administrative Law Judge on October 26, 2023. AR 114-15. The appointed ALJ conducted at telephonic hearing on June 3, 2025 (AR 43-67) and issued an unfavorable decision on June 12, 2025, concluding that plaintiff was not disabled (AR 14-42).

Plaintiff requested review of the ALJ decision by the Appeals Council on June 18, 2025 (AR 288-90). On June 26, 2025, the council denied plaintiffs request (AR 1-9) and stating, "we have denied your request for review . . . the Administrative Law Judge's decision is the final decision of the Commissioner of Social Security in your case." AR 1; *see* 42 U.S.C. § 405(h). Plaintiff now seeks judicial review of the Commissioner's final decision on the following three grounds:

**<u>Issues</u>**

(1) First, plaintiff claims that the ALJ improperly rejected the opinion of Dr. Sara Ahmad.

(2) Second, plaintiff claims that the ALJ's residual functional capacity assessment is not supported by substantial evidence because it did not include limitations to plaintiff's left hand or consider plaintiff's subjective testimony regarding his left hand.

(3) Third, plaintiff claims that the ALJ also improperly evaluated and rejected plaintiff's subjective symptoms regarding his mental health symptoms.

## II. RELEVANT LEGAL STANDARDS

### A. Standard of Review

The Court has jurisdiction to review the final decision of the Commissioner for substantial evidence and error of law. 42 U.S.C. § 1383(c). The Fifth Amendment prohibits the government from depriving persons of property without the due process of law. *U.S. Const. amend. V*. Social Security plaintiffs have a constitutionally protected property interest in Social Security benefits. *Mathews v. Eldridge*, 424 U.S. 319 (1976); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1203 (9th Cir. 1990). When the Commissioner of Social Security renders a final decision denying benefits, the Social Security Act authorizes the District Court to review the Commissioner's decision. *See* 42 U.S.C. § 405(g).

"On judicial review, an ALJ's factual findings [are] 'conclusive' if supported by 'substantial evidence.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (*quoting* 42 U.S.C. § 405(g)). Substantial evidence is defined as "more than a mere scintilla" of evidence. *Richardson v. Perales*, 402 U.S. 389,

401 (1971). Under the "substantial evidence" standard, the Commissioner's decision must be upheld if it is supported by enough "evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (defining what a mere scintilla of evidence is).

The substantial evidence threshold "is not high" and "defers to the presiding ALJ, who has seen the hearing up close." *Ford v. Saul*, 950 F.3d 1141, 1159 (9th Cir. 2020) (citation omitted); *see also Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (substantial evidence "is a highly deferential standard of review"). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

**B. The Social Security Five-Step Sequential Inquiry**

Under the Social Security Act, "disability" is the inability to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant to Social Security benefits is disabled if his physical or mental impairment(s) are so severe that he could not do his previous work or any other substantially gainful work existing in the national economy when considering his age, education, and work experience. *See* 42 U.S.C. § 1382c(a)(3)(B). The Social Security Commissioner has a five-step process to determine if a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). The claimant has the burden of proof for steps one through four and if the claimant can satisfy the burden for each step, the burden shifts to the Commissioner for step five. *Ford v. Saul*, 950 F.3d 1141, 1148-1149 (9th Cir. 2020). The steps are followed in order and if the claimant is found not disabled at any step, the inquiry ends.

At step <u>one</u>, the claimant must establish that he does not engage in “substantial gainful activity.” *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step <u>two</u>, the Commissioner considers whether the claimant has an impairment or combination of impairments are “severe” and significantly limit the claimant’s physical or mental ability to do basic work activities. §§ 20 C.F.R. §§ 404.1520(a)(4)(ii)&(c), 416.920(a)(4)(ii)&(c). At step <u>three</u>, the Commissioner determines whether the claimant’s impairments meet or are the equivalent of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 which are presumably sufficient to preclude gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii)&(d), 404.1525(a), 416.920(a)(4)(iii)&(d), and 416.925(a). If the claimant’s impairment meets or equals one of the listed impairments, and is of sufficient duration, he is conclusively presumed disabled. §§ 404.1520(a)(4)(iii)& (d), 416.920(a)(4)(iii)& (d). If the claimant’s impairment is severe but does not meet or equal one of the listed impairments, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step <u>four</u>, the Commissioner determines whether the claimant can still perform “past relevant work.” 20 C.F.R. §§ 404.1520(a)(4)(iv), (e), (f), 416.920(a)(4)(iv), (e), (f). For claims filed and pending before June 22, 2024, past relevant work is work that the claimant performed in the last 15 years that lasted long enough for him to learn to do it and was substantial gainful activity. 20 C.F.R. §§ 404.1565(a), 416.920(a). For claims filed and pending after June 22, 2024, past relevant work is work that the claimant performed in the last 5 years that lasted long enough for him to learn to do it and was substantial gainful activity. *See Intermediate Improvement to the Disability Adjudication Process, Including How We Consider Past Work*, 89 Fed. Reg. 27,653 (Apr. 18, 2024); *Intermediate Improvement to the Disability Adjudication Process, Including How We Consider Past Work; Deferral of Effective Date*, 89 Fed. Reg. 48,138 (June 5, 2024). In making this determination, the Commissioner assesses the claimant’s residual functional capacity (“RFC”) and the physical and mental demands of the work previously performed. *See* §§ 404.1565(a), 416.920(a); *see also* 20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). RFC is what the claimant can still do despite his limitations. 20 C.F.R. §§ 404.1545, 416.945. In determining the RFC, the Commissioner must assess all evidence, including the claimant's and others' descriptions of the limitations and medical reports, to determine what capacity he has for work. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

The claimant can return to previous work if he can perform the "actual functional demands and job duties of a particular past relevant job," or "[t]he functional demands and job duties of the [past] occupation as generally required by employers throughout the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation marks and citation omitted). If the claimant can still do past relevant work, he is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f); *see also Berry*, 622 F.3d at 1231.

If the claimant cannot perform past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform other work available in the national economy. 20 C.F.R. §§ 404.1520(e), 416.920(e). This means "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 528 (9th Cir. 2014). The Commissioner must also consider the claimant's RFC, age, education, and past work experience to determine whether he can do other work. *Yuckert*, 482 U.S. at 141-42. The Commissioner may meet this burden either through the testimony of a Vocational Expert or by reference to the Grids. *Tackett v. Apfel*, 180 F.3d 1094, 1100-01 (9th Cir. 1999).

If the Commissioner establishes at step five that the claimant can do other work which exists in the national economy, then he is found to be not disabled. 20 C.F.R. §§ 404.1566(b), 416.966(b). Conversely, if the Commissioner determines the claimant unable to adjust to any other work, then he is found disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g).

//

## III. ANALYSIS

### A. ALJ's Residual Function Capacity Determination

The errors claimed by plaintiff concern step four of the Social Security sequential analysis and challenge the ALJ's RFC determination. At step four, the ALJ assessed plaintiff as having the RFC to perform light work with the following limitations: "lifting and/or carrying up to frequently climbing ramps or stairs; occasionally climbing ladders, ropes, or scaffolds; frequently stooping, kneeling, crouching, or crawling; occasionally working in high, exposed places; occasionally working in proximity to dangerous moving mechanical parts; occasional exposure to extreme cold and vibrations; and the claimant is limited to working in an environment with a moderate noise level as defined in the Selected Characteristics of Occupations." AR 23. Further, the ALJ found that plaintiff "is able to frequently interact with supervisors, and occasional interact with coworkers and the public; and can handle occasional changes in a routine work setting." *Id.*

In making plaintiff's RFC determination, the ALJ found that Dr. Ahmad's claim that "plaintiff was moderately limited in his ability to interact with supervisors and severely limited in his ability to interact with coworkers" conflicted with the available medical evidence in the record. AR 33. Thus, the ALJ stated that:

> prior to his date last insured, he generally reported improvement with medications . . . . [and] it was not until after his date last insured that he was reported for disruptive behavior at the VA . . . . As such, I have limited him to occasional contact with coworkers and the public and frequent interactions with supervisors.

AR 33.

The ALJ also did not include left hand limitations as part of plaintiff's RFC determination and found that his subjective testimony regarding wearing a glove did not support finding any limitations. Moreover, the ALJ generally found that plaintiff's statements "about the intensity, persistence, and

limiting effects of [his] symptoms… are not entirely consistent with the medical evidence and other evidence in the record[.]" AR 25; *see also* AR 30.

**B. Dr. Ahmad's Opinion**

Plaintiff first claims that the ALJ erred when he rejected Dr. Ahmad's claim that plaintiff has moderate limitations on interacting with supervisors and severe limitations in his ability to interact with co-workers. *ECF No. 15* at 6-8. Preliminarily, the ALJ did not entirely reject Dr. Ahmad's opinion but limited plaintiff's limitation to be "occasional contact with coworkers and the public and frequent interactions with supervisors." AR 33.

Plaintiff argues that the ALJ ignored "Dr. Ahmad specifically referenc[ing] behaviors at work prior to the date last insured." *Id.* at 7. Plaintiff then cites from the AR to state that he worked as an armed security guard in 2017, and stopped working because "anxiety led to physical altercations with other employees and two verbal conflicts with supervisors." *Id.* However, those circumstances occurred outside the relevant period. The AR reflects that plaintiff worked for various organizations as a security guard from March 2013 to February 2017, before his alleged onset of disability on March 31, 2017. AR 344. To the extent that the ALJ did not explicitly address such evidence or Dr. Ahmad's mention of it, she did not err in doing so. *Burkett v. Berryhill*, 732 Fed. Appx. 547, 551 (9th Cir. 2018) (stating that an ALJ is not required to discuss evidence on the record that is not significant or probative and evidence concerning a plaintiff's symptoms and limitations outside the alleged onset of disability is neither significant nor probative) (citing *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008)).

Plaintiff next claims that the ALJ improperly cherry-picked evidence regarding plaintiff's medication improvement and ignored plaintiff's reported continued symptoms of anxiety and panic attacks that supported Dr. Ahmad's opinion. The Court does not find plaintiff's arguments persuasive. The ALJ reasonably looked at the record and found substantial evidence of plaintiff's reported

improvement with medications which contradicted Dr. Ahmad's opinion and supported the ALJ's decision to limit Dr. Ahmad's opinion. The ALJ cited various examples directly to the record that show plaintiff's reported improvement from the medications. AR 33 (citing medical evidence). "[T]he ALJ is not required to discuss every piece of evidence in the record when reaching his conclusions[.]" *M.A.G. by the Through Basso v. Kijakzi*, No. 2:23-cv-01595-EJY, 2024 WL 1695114, at *5 (D. Nev. April 18, 2024) (citation omitted). Therefore, the ALJ does not need to "draft dissertations when denying benefits." *Lambert*, 980 F.3d at 1277. "[A]n ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022).

Having found Dr. Ahmad's option to be contradicted by medical evidence, the ALJ's decision not to address medical evidence that did support Dr. Ahmad's opinion was not reversable error. *See, e.g., Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-1395 (9th Cir. 1984) (observing that, "[w]here a material conflict in the evidence is present, only the ALJ can resolve it" and finding that ALJ was entitled to discount and ignore contradicted psychiatrist opinion). Altogether, the ALJ provided substantial evidence to limit Dr. Ahmad's opinion regarding his ability to have contact with the public, coworkers, and supervisors.

**C. Plaintiff's Left-Hand Limitations**

Plaintiff argues that the ALJ erred in not including left-hand limitations as part of his RFC. Specifically, plaintiff argues that the ALJ did not properly evaluate medical evidence from the record indicating that he had a left-hand limitation. *See ECF No. 15* at 8-10. He relatedly argues that the ALJ improperly rejected his subjective testimony regarding left-hand limitations. *Id.* at 10-11. The Court does not find plaintiff's arguments persuasive.

Plaintiff claims that the ALJ failed to properly consider evidence that he suffered a laceration causing a variety of physical issues with his left hand. *See ECF No. 15* at 9 (listing the issues that

plaintiff faced following his left hand getting lacerated). Foremost, plaintiff mostly relies on evidence from November 2011 and April 2024 (ECF No. 15 at 9 (citing AR 713, 1041, 1043)) which are outside the March 1, 2017, to December 31, 2022 relevant period (AR 19).[1] *See Burkett*, 732 Fed. Appx. at 551 (citing *Howard ex rel. Wolff*, 341 F.3d at 1012; *Carmickle*, 533 F.3d at 1165). The ALJ also properly considered and analyzed evidence regarding plaintiff's left hand.

The ALJ specifically noted that as far back as 2011, plaintiff suffered from "moderate axonal loss interdigital sensory branch of the median nerve to digit 2 neuropathy" on his left hand. *See* AR 25. She also noted that plaintiff was recommended surgery "for the nerve repair of his left hand" on August 22, 2019. AR 26. Furthermore, the ALJ identified and considered plaintiff's subjective testimony where he claimed regarding his left hand:

- Tingling, burning, and shooting pain when he touches things.
- Problems using his hands.
- A need to use a glove.

AR 24, 31. The ALJ ultimately found that plaintiff had no left-hand limitations during the relevant period because he did not seek advice on surgery with his left hand until April 2024 and thereafter only chose to do occupational therapy. *See* AR 31. The ALJ also found as unpersuasive plaintiff's testimony that he needed to use a glove on his left hand for that same reason. *Id.*

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citation omitted)

---

[1] Plaintiff's brief (ECF No. 15) also identified March 2019 (AR 577) and November 2021 (AR 488) records that are within the relevant period. However, the November 2021 medical record (AR 488) are notes from a routine primary care encounter (AR 484). While the November 2021 record noted that plaintiff had "[l]eft index finger neuropathy post surgery post accidental laceration with primary surgical closure" (AR 488), it did not list any issues with plaintiff's left hand in his "Medical Problem List" (AR 484-485). Similarly, the March 2019 record (AR 577) is from a visit where plaintiff's noted chief complaint was "pain at the Cervical area" (AR 572), and does not identify any ongoing medical issues with plaintiff's left hand. Instead, the March 2019 record simply notes that plaintiff "ended up getting cut" sometime during his 2005 to 2012 military service when he tried to break up a fight (AR 577).

(internal quotation marks omitted). "Where the evidence can reasonably support either affirming or reversing a decision, we may not substitute our judgment for that of the [ALJ]." *Id.* (citation omitted) (internal quotation marks omitted). While plaintiff may not agree with the ALJ's decision here, she was reasonable and did not err in evaluating the evidence regarding his left hand. *See Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (stating that "[w]here a material conflict in the evidence is present, only the ALJ can resolve it." (citing *Richardson v. Perales,* 402 U.S. 389 (1971)).

Plaintiff's related argument that the ALJ improperly rejected his subjective testimony regarding his left hand also fails. Foremost, the ALJ did not entirely reject plaintiff's testimony regarding his left hand. She only found as unpersuasive plaintiff's testimony that he needed to wear gloves on his left hand. *See* AR 31.

"An ALJ is not required to believe every allegation of disabling [symptoms], or else disability benefits would be available for the asking, a result plainly contrary to the Social Security Act." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (cleaned up). Thus, where the claimant has provided objective medical evidence of an impairment that could reasonably produce the alleged symptoms, the ALJ evaluates the alleged intensity and persistence of the symptoms by assessing their consistency with (1) the objective medical evidence and (2) the other evidence in the record. *See* 20 C.F.R. § 404.1529(c)(2)-(4); *Social Security Ruling (SSR) 16-3p*, 2017 WL 5180304; *see also Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) ("First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.")

A claimant is "not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Garrison*, 759 F.3d at 1014 (emphasis omitted) (citation omitted). A complaint need not produce "objective medical evidence of the pain or fatigue itself, or the severity

thereof." Id. (citation omitted). "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of [their] symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014-15 (citation omitted); *see also Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) ("specific, clear and convincing" are required to reject subjective testimony about the severity of symptoms). While the "clear and convincing standard is the most demanding required in Social Security cases" (*Garrison*, 759 F.3d at 1015), ALJ meets such standard by "showing" his or her work. *Smartt*, 53 F.4th at 499. An ALJ may show her work by identifying specific testimony of the plaintiff and explain what evidence undermines that testimony. *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (citations omitted). The standard for reviewing the ALJ's analysis "isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

Here, plaintiff reasonably shows that he could have some degree of impairing symptoms with his left hand and no party alleges malingering. The only issue is whether the ALJ offered specific, clear and convincing reasons for rejecting his subjective testimony, which the Court finds the ALJ did. By noting that plaintiff did not seek advice on surgery with his left hand until well after the relevant period and thereafter only choose to do occupational therapy, the ALJ identified, discussed and elaborated sufficient medical evidence to show her work and be convincing. *See M.A.G. by the Through Basso*, 2024 WL 1695114, at *5 (citation omitted); *Lambert*, 980 F.3d at 1277. The ALJ may consider and weigh against claimant a failure to seek treatment when rejecting a claimant's subjective symptom testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012) ("[I]f a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated") (internal citations omitted). Furthermore, "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v.*

*Comm'r of Soc. Sec. Admin.,* 533 F.3d 1155, 1161 (9th Cir. 2008). Accordingly, the Court finds the ALJ met the "clear and convincing standard" in this matter to reject plaintiff's subjective testimony regarding wearing a glove on his left hand.

Altogether, the ALJ gave substantial evidence to not include left-hand limitations as part of plaintiff's RFC and clear and convincing reasons to find as unpersuasive plaintiff's subjective testimony regarding wearing a glove on his left hand.

**D. Plaintiff's Subjective Testimony Regarding His Mental Health Symptoms**

Plaintiff reasonably shows that he could have some degree of impairing symptoms with his mental health and no party alleges malingering. Plaintiff argues that the ALJ erred in not giving clear and convincing reasons to reject plaintiff's subjective testimony regarding his mental health symptoms. *ECF No. 15* at 11-12. The ALJ relevantly identified that plaintiff's testimony regarding his mental health symptoms that:

- He has PTSD, depression, and anxiety, and that his PTSD and depression are the most disabling.
- He has a hard time being around people and dealing with any stress.
- He gets overwhelmed easily and has outbursts and breaks down.
- He has migraines several times a week that can last up to 2 days.
- He has problems concentrating and remembering things.
- He spends his time in his room on his bed watching tv or spacing out.
- His condition is worse now than in 2017.

AR 22-23.

The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms but his statements concerning the intensity, persistence and limiting effects of these symptoms was not entirely consistent with the medical evidence. AR 25, 30. In rejecting the plaintiff's testimony, the ALJ explained the medical evidence undermining that testimony clearly enough to convince the Court. Among the ALJ's developed and balanced discussion of those medical records and findings, which included that plaintiff:

- Could perform frequent interaction with supervisors, and occasional interaction with coworkers and the public balancing plaintiff's medical records (with some records noting that plaintiff was pleasant and cooperative and others noting that he was anxious and was reported for disruptive behavior at the VA).
- Could handle occasional changes in a routine work setting, given that exams showed that he had intact memory and concentration, and that the records did not center upon concentration and memory problems.
- Did not suffer from migraines limitation during the relevant period, given that the records show that he was having migraines once a week and it was not until January 2024 that he complained of 7-8 migraines per month and that he did not take any medications regarding his migraines until "just prior to the date last insured."
- Would do best in non-confrontational tasks that do not require collaborative effort to address his anxiety and avoid disruptive behavior.
- Had thought processes were generally logical, and cooperative and pleasant on exams.
- Generally reported improvement to mental health with medications.

AR 30-34.

In sum, the ALJ identified, discussed and elaborated sufficient medical evidence to show her work, be convincing, and identify medical evidence that contradicted with plaintiff's subjective testimony regarding his mental health. *See M.A.G. by the Through Basso*, 2024 WL 1695114, at *5 (citation omitted); *Lambert*, 980 F.3d at 1277; *Carmickle v. Comm'r of Soc. Sec. Admin.,* 533 F.3d at 1161.

## IV. CONCLUSION & ORDER

Given the foregoing, the Court finds that the ALJ properly considered and evaluated the medical evidence and stated specific, clear and convincing reasons to find as unpersuasive plaintiff's subjective symptom testimony regarding wearing a glove on his left hand and his mental health symptoms.

ACCORDINGLY,

**IT IS ORDERED that:**

1. Plaintiff's requested relief in his Brief (ECF No. 15) is **DENIED**.
2. Commissioner's Brief (ECF No. 17) requesting to affirm is **GRANTED**.

3. The Clerk of Court is directed to enter final judgment **AFFIRMING** the decision of the Administrative Law Judge.

4. The Clerk of Court shall **CLOSE** this case.

DATED: August 20, 2026.

IT IS SO ORDERED.

Hon. Maximiliano D. Couvillier, III
United States Magistrate Judge